UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMES WILLIAMS,

    Plaintiff,

v.

KING COUNTY JAIL, et al.,

    Defendants.

Case No. C11-25-RSL-BAT

**REPORT AND RECOMMENDATION**

Plaintiff James Williams is an inmate at the Washington State Monroe Correctional Complex. He filed a 42 U.S.C. § 1983 civil rights action alleging that while he was held at the King County Jail in 2008 or 2009, jail staff assaulted him by hurting his wrists and breaking his thumb and small finger. Dkt. 10 (complaint).[1]

Defendants have moved for summary judgment. Dkt. 42. Defendants contend (1) all claims against defendants Carter, Fowler, and Douglas should be dismissed because Mr. Williams has failed to show they personally participated in any wrongdoing; (2) Mr. Williams failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act; (3) the defendants enjoy qualified immunity and applied appropriate force in response to Mr. Williams's aggressive conduct; (4) Mr. Williams has failed to present sufficient facts to establish

---

[1] Mr. Williams proceeds pro se and in forma pauperis.

REPORT AND RECOMMENDATION - 1

a claim under § 1983; and (5) Mr. Williams's claims for emotional injury should be dismissed because his physical injuries were de minimus. *Id.*

In response to defendants' motion, Mr. Williams contends Officer Jones hurt his wrist, Officer Poe broke his thumb, and that Officer Holloman and Lamond hurt his wrist. He also contends his little finger was broken on January 22, 2009, but does not clearly indicate which officer caused this injury. Dkt. 51 at 6, 9. After careful consideration of the motion for summary judgment, and the balance of the record, the Court recommends defendants' motions for summary judgment be **GRANTED** and that Mr. Williams's claims against all named defendants be **DISMISSED**.

**BACKGROUND**

**A.      The Complaint before the Court**

The complaint names the following defendants:

1. King County Jail
2. King County Jail Commander John Doe
3. Sgt. Justice
4. CO Poe
5. CO Holloman
6. CO Carter
7. CO L. Jones
8. CO Douglas
9. CO Fowler
10. John Doe defendants

The complaint alleges Mr. Williams was arrested in 2009 and housed in the King County Jail for 18 months. Dkt. 10 at 5.[2] Mr. Williams alleges he was assaulted on numerous occasions. On February 22, 2008 or 2009, he alleges correction officers Poe, Lamond, Holloman, and Sgt. Stowers broke his thumb while he was handcuffed. *Id.* Mr. Williams claims the assault occurred

---

[2] Defendants contend Mr. Williams was arrested for the December 31, 2007 murder of Shannon Harps and taken into custody in 2008. Dkt. 42 at 1.

REPORT AND RECOMMENDATION - 2

1 while he was in a "defenceless helpless position" and that his wrist was also "severely injured."

2 *Id.* He alleges that three months later on May 13, 2008 or 2009, Officers Justice, Lamond,

3 Holloman and Carter broke his "little finger in the joint leaving it horribly disfigured and useless."

4 *Id*. at 5-6. Mr. Williams also alleges in July 2008, Officer Jones assaulted him while escorting

5 him to a police interview. *Id.* at 8. The complaint does not detail what this attack involved but

6 indicates "Detective Steiger photographed my injuries to my wrist my fingers were not seriously

7 hurt during this attack." *Id.*

**B.     Facts alleged in defendants' summary judgment motion**

Defendants paint a very different picture. According to defendants, Mr. Williams was housed in the King County Jail in 2008 and 2009. Dkt. 42 at 1-2. During that time, defendants claim Mr. Williams repeatedly threatened and assaulted staff and other inmates and regularly refused to follow staff orders. *Id.* at 2. On June 23, 2008, Corrections Officer Jones escorted Mr. Williams to the booking area to meet with Seattle Police detectives. On the way to the booking area, Mr. Williams dropped to the floor. While Officer Jones was assisting Mr. Williams to his feet, Mr. Williams began making threats and tried to pull away. *Id.* At the booking area, Mr. Williams spit in Officer Jones's face and received an infraction as a result. *Id.* Defendants contend that Mr. Williams did not file a complaint against Officer Jones or report any injuries. *Id.* Defendants also contend that in June 2008, King County had a grievance system and that all inmates were informed that inmate grievances must be submitted within 14 days of the incident being grieved. *Id.*

Defendants contend that on January 22, 2009, Mr. Williams stabbed Officer Drake with a pencil. *Id.* at 3. Consequently, all sharp objects and potential weapons were removed from Mr. Williams's cell. When officers returned Mr. Williams to his cell, Mr. Williams began to pull

REPORT AND RECOMMENDATION - 3

away as his handcuffs were removed. A struggle ensued and Mr. Williams clenched his fists making it impossible for the officers to remove the handcuffs. After Mr. Williams's allegedly refused to open his fists, officers forced his fists open. *Id*. Mr. Williams was checked for injuries immediately after this incident; medical staff noted mild swelling to the thumb. *Id.*

On May 13, 2009, Officer Douglas heard a tapping sound coming from Mr. Williams's cell that sounded like metal. *Id.* at 4. Officers went to the cell and asked Mr. Williams to open his hands which were clenched closed. Mr. Williams did not respond. When officers entered his cell, Mr. Williams kept his hands clenched closed. As a result, officers forced his hands open; nothing was found. *Id.* After this incident, Mr. Williams claimed his fingers were broken. Medical staff found Mr. Williams had moderate swelling and redness to his left finger and suspected a sprain. *Id.* X-rays of Mr. Williams's fingers show he did not suffer a fracture. *Id.* at 5.

**DISCUSSION**

**A.     Summary judgment standard**

Summary judgment should be granted when, viewing the evidence in the light most favorable to the nonmoving party, there exists "no genuine issue as to any material fact" such that "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is a fact relevant to the outcome of the pending action. *See Anderson v. Liberty Lobby*, *Inc*., 477 U.S. 242, 248 (1986). Genuine issues of material fact exist when the evidence would enable "a reasonable jury . . . [to] return a verdict for the nonmoving party." *Id*. (internal citations omitted).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). The moving party can carry

its initial burden by establishing that the nonmovant lacks the quantum of evidence needed to satisfy his burden of persuasion at trial. *Block v. City of Los Angeles*, 253 F.3d 410, 416 (9th Cir. 2001).

If the moving party meets this burden, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts demonstrating a genuine issue of fact for trial and produce evidence sufficient to establish the existence of the elements essential to his case. *See* Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. Once the moving party has met its burden of proof, the procedural burden shifts to the party opposing summary judgment. That party must go beyond the pleadings and affirmatively establish a genuine issue on the merits of his case. Fed. R. Civ. P. 56(e). The nonmoving party must do more than simply deny the veracity of everything offered or show a mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248-49. The nonmoving party's failure of proof "renders all other facts immaterial," creating no genuine issue of fact, and thereby entitling the moving party to the summary judgment it sought. *Celotex Corp.*, 477 U.S. at 323.

When applying these standards, the Court must draw all reasonable inferences in favor of the nonmoving party. *United States v. Johnson Controls, Inc*., 457 F.3d 1009, 1013 (9th Cir. 2006).

Mr. Williams's claims are brought under 42 U.S.C. § 1983. In order to sustain a § 1983 claim, Mr. Williams must show that (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state or federal law. *West v. Atkins*, 487 U.S. 42, 48 (1988);

*Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

**B.     Failure to exhaust administrative remedies**

Mr. Williams's claims he was assaulted by defendants at the King County Jail between 2008 and 2009. Defendants argue his claims are governed by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), which bars any action "with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Exhaustion is mandatory and not left to the discretion of the district court. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (*citing Booth v. Churner*, 532 U.S. 731, 739 (2001)). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

To meet the exhaustion requirement, an inmate must show "proper exhaustion," which "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Ngo*, 548 U.S. at 90–91. Defendants have the burden of proving the affirmative defense of failure to exhaust administrative remedies. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). Defendants have submitted evidence that the King County Jail had grievance procedures in place during the relevant time and that Mr. Williams did not utilize those procedures in regards to the claims he now raises. Dkt. 44. Mr. Williams does not dispute that he failed to properly exhaust his administrative remedies. In fact, in his response to the summary judgment motion, he admits he did not exhaust his administrative remedies.[3] Dkt. 51 at 27-28.

---

[3] The administrative remedies that were available to Mr. Williams are outlined in defendants'

Mr. Williams, however, contends he is excused from the exhaustion requirement because he could not "grieve them staff refused to give me grievances to do so and on a few occasions when I got grievances from other inmates and submitted them I watched staff read my grievances and then through them in the trash." Dkt. 51 at 27-28.

A prisoner's failure to exhaust may be excused where he "took reasonable and appropriate steps to exhaust his . . . claim and was precluded from exhausting, not through his own fault but by a force outside his control." *Nunenz v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010). In *Nunez,* a prisoner filed a grievance. After the grievance was denied, the prisoner's diligent attempts to exhaust his administrative remedies were stymied due to the Warden's mistake in giving the prisoner the wrong regulation. The Ninth Circuit Court of Appeals excused the prisoner's failure to timely exhaust his remedies on the grounds "Nunez could not reasonably be expected to exhaust his administrative remedies without the [regulation] . . . and because Nunez timely took reasonable steps to obtain it." *Id.* at 1225.

In contrast to the prisoner in *Nunez*, Mr. Williams did not diligently attempt to exhaust his administrative remedies. His explanation is vague at best; moreover it does not withstand scrutiny. The records of the King County Jail establish Mr. Williams was aware of the jail grievance process and in fact filed 19 grievances while housed at the jail. Hence, even assuming Mr. Williams was initially denied grievance forms, or that some of his grievances were thrown away, he still was able to file 19 grievances and was clearly able to grieve the alleged assaults had he chosen to do so. *See* Dkt. 44. He did not and the Court thus concludes Mr. Williams should not be excused for failing to exhaust the administrative remedies that were available to him.

---

submissions at Dkt. 46.

REPORT AND RECOMMENDATION - 7

Accordingly, the Court recommends the complaint be dismissed with prejudice. The PLRA requires "[p]roper exhaustion," which "demands compliance with an agency's deadlines and other critical procedural rules." *Ngo*, 548 U.S. at 90-91. "[F]iling an untimely or otherwise procedurally defective administrative grievance or appeal" does not satisfy the PLRA's exhaustion requirement. *Id*. at 84. The King County Jail grievance procedures require an inmate to submit a grievance within 14 days of the incident that is being grieved. Dkt. 44 at 51. Years have passed since the acts alleged in the complaint. As the time to properly exhaust administrative remedies has long passed, Mr. Williams's complaint should be dismissed with prejudice.[4]

## C. Personal participation requirement

Although the Court recommends dismissal for failure to exhaust, the Court nevertheless will consider defendants' remaining arguments. Mr. Williams named the King County Jail Commander, Officer Carter, Officer Douglas, and Officer Fowler as defendants. Defendants contend these individuals should be dismissed because Mr. Williams has failed to show they engaged in any wrongdoing. A defendant is not liable in a § 1983 civil rights action if he or she did not personally participate in the alleged violation. *Weisbuch v. County of Los Angeles*, 119 F.3d 778, 781 (9th Cir. 1997). A defendant personally participates if he "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [that person] is legally

---

[4] Dismissal with prejudice is consistent with the Supreme Court's decision in *Woodford v. Ngo*, 548 U.S. 81 (2006). In that case, the Supreme Court addressed whether a prisoner could avoid the PLRA's exhaustion requirement by failing to seek administrative review within the period of time specified in the institution's procedures. The plaintiff argued § 1997e(a) should be interpreted to mean that the doors of the federal courthouse were open as soon as the administrative remedies were no longer available, regardless of the cause of the unavailability. The Supreme Court roundly rejected the argument that "[b]are unavailability suffices even if this results from a prisoner's deliberate strategy of refraining from filing a timely grievance so that the litigation of the prisoner's claim can begin in federal court." 548 U.S. at 88.

REPORT AND RECOMMENDATION - 8

required to do that causes the deprivation." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Although there is no pure respondeat superior liability under § 1983, a supervisor is liable for the constitutional violation of subordinates "if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Under this standard the claims against the King County Jail Commander, Officer Carter, Officer Douglas, and Officer Fowler should be dismissed. By Mr. Williams's own account, the only defendants who participated in the alleged assaults against him are Officers Jones, Fowler, Poe, Holloman, and Lamond. *See* Dkt 1 (complaint) and Dkt. 51 (response to summary judgment motion).

**D.     Claims against King County Jail**

In a § 1983 action a County jail, such as the King County Jail, is not a proper defendant. *See Nolan v. Snohomish County*, 59 Wn.App. 876, 883 (1990) ("In a legal action involving a county, the county itself is the only legal entity capable of suing and being sued."). For purposes of the summary judgment motion, the Court will construe all claims asserted against the King County Jail as claims against the County itself. A local government unit such as a county can be sued as a "person" under § 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). A plaintiff seeking to impose liability on a county under § 1983 must identify a municipal "policy" or "custom" that caused his or her injury. *Bryan County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell*, 436 U.S. at 694). A mere conclusory allegation of constitutional harm is insufficient without specific, plausible facts to support it. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009).

In this case, Mr. Williams has not shown that there is any county policy or procedure

promulgated by King County that can legitimately be interpreted as the driving force behind the actions of the officers. Accordingly, all claims against King County should be dismissed.

### E. Qualified immunity

Defendants contend they enjoy qualified immunity. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Because qualified immunity is an immunity from suit rather than a mere defense to liability, this question should be resolved at the earliest possible stage in litigation. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The qualified immunity inquiry has two parts: whether the facts alleged or shown make out a violation of a constitutional right; and whether the right at issue was "clearly established" at the time of a defendant's alleged misconduct. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). Courts are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case. *Pearson v. Callahan*, 555 U.S. 223 (2009).

Defendants are not entitled to qualified immunity under both prongs of the *Saucier* inquiry. First, the parties vigorously dispute the facts surrounding Mr. Williams's claim he was assaulted. Defendants contend they responded to Mr. Williams's aggressive acts and used reasonable force consistent with the proper maintenance of security in the jail. Mr. Williams claims he was not aggressive and was assaulted while he was defenseless. Both parties agree force was used. Both parties agree that Mr. Williams suffered some injury to his fingers and wrists. Hence, the Court cannot chalk up Mr. Williams's claims as solely a by-product of delusional paranoid thinking as defendants suggest.

There is no evidence Mr. Williams suffered any fractures or broken bones as he claims.

However, the absence of fractures does not resolve the question of whether defendants caused more injury than was justified. That question and whether defendants' use of force was reasonable, are for a jury or judge to determine at a trial. There are thus triable issues of fact about whether the force used was appropriate as defendants claim or whether it was excessive as Mr. Williams claims.

And second, Mr. Williams's rights under the Eighth or Fourteenth Amendments to be free of excessive use of force were clearly established at the time of the alleged assaults. *See e.g. Hudson v. McMillian,* 503 U.S. 1 (1992) (post-conviction excessive force claims are brought under the Eighth Amendment); *Graham v. Connor*, 490 U.S. 386 (1989) (pretrial detainee excessive force claims are brought under the Fourteenth Amendment). Hence, it would be clear to a reasonable person that it was unlawful to assault or use excessive force against an inmate such as Mr. Williams at the time of alleged incidents. Accordingly, the Court concludes defendants are not entitled to qualified immunity on plaintiff's claimed violations of excessive force. To be clear, the Court's conclusion in no way implies Mr. Williams's claims would prevail or are meritorious. The Court's conclusion applies only as far as the motion for summary judgment. However, it may very well be that a judge or jury would ultimately find, after hearing all of the evidence, that Mr. Williams's claims are unfounded and that the defendants' account of the matters complained of reflect what really happened.

**F.    Defendants' claims the injuries were de minimus, reasonable and not proximately caused by defendants' actions**

Defendants contend Mr. Williams's claims for emotional damages should be dismissed because his injuries were de minimus, and that all of claims should be dismissed because defendants' actions were reasonable and did not proximately cause any injury. The medical evidence defendant has presented shows Mr. Williams did not suffer broken fingers or fractures

as claimed. But the evidence indicates he suffered some injury. The medical evidence shows Mr. Williams received treatment and that the medical staff opined he suffered from swelling, pain, and that he likely had a sprain. The Court thus cannot say that Mr. Williams's injuries are so minimal that as a matter of law, summary judgment must be granted. Similarly, the Court cannot say as a matter of law that the defendants' actions were reasonable or that the defendants did not proximately cause Mr. Williams's alleged injuries. As discussed above, the parties are in complete disagreement regarding the circumstances surrounding Mr. Williams's injuries; accordingly, whether defendants acted reasonably or proximately caused the alleged injuries are contested issues that cannot be resolved on summary judgment.

**CONCLUSION**

The Court recommends **GRANTING** defendants' motion for summary judgment as discussed above and **DISMISSING** the matter with prejudice. Any objections to this Recommendation must be filed and served upon all parties no later than **September 28, 2011.** If no objections are filed, the matter will be ready for the Court's consideration on that date. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed twelve pages. The failure to timely object may affect your right to appeal.

A proposed order accompanies this Report and Recommendation. The Clerk is directed

///

///

///

to send a copy of this Order to plaintiff and to the Honorable Robert S. Lasnik.

DATED this 7th day of September, 2011.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13